# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **SEDRICK WILLIAMS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No. 2:18-CV-01351-CLM |
| } | |
| **INTERNATIONAL** } | |
| **MOULDING,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM ORDER

Sedrick Williams, an African American male, worked as a warehouse laborer and later a forklift operator for International Moulding from 2016 until 2018. International Moulding fired Williams after he walked off the job, having discovered that a white forklift driver was being paid more than he was. Williams sues International Moulding, alleging that the company terminated him because of his race and in retaliation for his complaints about the pay difference, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

International Moulding seeks summary judgment on all claims (doc. 45). For the reasons stated below, the court **grants** International Moulding's motion. So this case will be dismissed.

## STATEMENT OF THE FACTS

<u>Williams' Hiring and Promotion</u>: International Moulding hired Williams as a warehouse laborer in September 2016, paying him $7.25 per hour. He received two raises, once to $8.00 per hour and then to $8.50 per hour. Williams worked in this role until International Moulding promoted him to the position of forklift driver, about one year later. Around this time, Williams received another raise, this time to $8.75 per hour, and then a final raise to $9.50 per hour.

<u>Discovery of Pay Difference and Williams' Termination</u>: Errol Woods was one of Williams' supervisors throughout his employment with International Moulding. Doc. 46-8 at 8. In May 2018, Williams discovered through another employee that International Moulding was paying Bobby Benton, a white forklift driver, $10.00 per hour. *Id.* at 9-10. Williams approached Woods and asked why Benton was being paid more. In response, Woods said, "[l]et me see what I can do."[1] *Id.* at 10. Williams then left the facility to file a report with the EEOC. *Id.* Once Williams made it to the bus stop, however, Woods called him back to the facility. Another supervisor, Josh Cumbee, then asked Williams, "[w]hat can I do to fix this?" Williams answered that he wanted a raise to $11.00 per hour because he had been with International Moulding longer than Benton had. *Id.* at 8. Cumbee left without

---

[1] Williams, in his response to the motion for summary judgment, says at one point that Josh Cumbee made this statement. However, the deposition makes clear that Woods made the statement. Doc. 46-8 at 9-10.

committing to anything and Williams went to file a report with the EEOC. *Id.* Williams did not mention to anyone that he planned to file a report, nor did he mention race when discussing the pay difference with his supervisors. *Id.* at 10-11.

When Williams returned to work three days later, another supervisor informed him that International Moulding had terminated his employment for having left the facility without approval. *Id.* at 12-13. Two other employees had also been terminated for leaving work the same day. *Id.*

Williams now sues International Moulding for race discrimination in pay (Count I) and retaliation (Count II).

## STANDARD OF REVIEW

Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In turn, to avoid summary judgment, the nonmoving party must go beyond mere allegations to offer specific facts creating a genuine issue for trial. *Id.* at 324. Moreover, the court must view all evidence and draw all inferences in the light most favorable to the nonmoving party. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir.2005). When no genuine

issue of material fact exists, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## ANALYSIS

Courts use the *McDonnell Douglas* framework for assessing employment discrimination claims under both Title VII and 42 U.S.C. § 1981. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (applying the *McDonnell Douglas* framework to § 1981 claims). This framework entails three steps:

(1) The plaintiff must establish a prima facie case of discrimination to raise an inference of discrimination by the employer.

(2) To rebut this inference, the employer must present evidence that it has a legitimate, nondiscriminatory reason for its action. This is a burden of production, not persuasion.

(3) The plaintiff must prove that the employer's proffered reason in Step 2 is mere pretext for discrimination.

*McDonnell Douglas*, 411 U.S. at 802-803. The court will assume (without finding) that, in the first step, Williams could establish a prima facie case for Counts 1 and 2. The next question is whether International Moulding offered a legitimate, nondiscriminatory reason for paying Williams less than Benton and for later firing Williams. Again, this burden is one of production only and is "exceedingly light." *Meeks v. Computer Assocs., Int'l*, 15 F.3d 113, 1019 (11th Cir. 1994).

As to the pay difference (the basis for Williams' race discrimination claim),

International Moulding argues that it approved Benton for a raise after he told his supervisor that he planned to leave for a different job. Doc. 46-1. Wanting to keep Benton, International Moulding offered him a raise to $10 per hour, which is what the other job would have paid. *Id.* As to Williams' firing (the basis for Williams' retaliation claim), International Moulding maintains that it terminated Williams for leaving the facility without approval, citing two other employees who the company also fired for the same reason on the same day. *Id.* And Williams concedes that he did, in fact, "walk off the job." Doc. 52 at 2. The court finds that both explanations for International Moulding's actions are legitimate and nondiscriminatory, as neither consider Williams' race or his complaints of a pay disparity.

Under *McDonnell Douglas*, the burden thus shifts to Williams to show, by a preponderance of the evidence, why International Moulding's explanations are pretext for discrimination. Williams could accomplish this by, for instance, showing that International Moulding's reasons are so far-fetched as to be "unworthy of credence." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). But Williams fails to address—much less create a jury question for—this step.

**1. Pretext – Race Discrimination (Count I)**

Williams says only in a conclusory manner that "International Moulding had no legitimate, non-discriminatory reasons for the alleged difference in pay." Doc. 52. Williams then moves on to his retaliation argument, having said nothing of

pretext or why he believes International Moulding's explanation that it paid Benton $10 per hour to keep him from leaving for another job is "unworthy of credence." *Burdine*, 450 U.S. at 256. Of course, the court may also mine Williams' prima facie argument for evidence of pretext. *Id.* Yet this is Williams's entire argument:

> Plaintiff that he earned less than Benson from November 8, 2017 until May 18, 2014.  To start Plaintiff at $10.00 per hour while Benson had been making $10.00 per hour since May 18, 2017 would have put Plaintiff at a disadvantage.
>
> Woods did not make the offer of $10.00 per hour rewarding to Plaintiff since it would have been less than Benson's. Woods arrangement also required discrimination of Plaintiff to have been working longer than Benson and was receiving an equal amount at that moment.

Doc. 52. This argument lacks any showing that International Moulding's explanation had such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" as to create an issue of fact for a jury. *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). So having failed to rebut International Moulding's proffered reason for the pay difference between Benton and Williams, Williams's race discrimination claim fails.

### 2. Pretext – Retaliation (Count II)

Williams' argument for pretext in his retaliation claim is similarly limited to

conclusory allegations devoid of record citations. Doc. 52. The only paragraph that appears intended to rebut International Moulding's explanation for terminating Williams – that he walked off the job without approval – reads:

> By walking off the job for ½ day, Friday, Plaintiff was not intense by supervisors that they would try to retaliate by firing him. He returned to work on Monday. Plaintiff can show his protective activity was the "butt-for" cause of the alleged adverse action of the employer. He can prove his alleged claim of retaliation by showing that the firing was to cover up. *University of Texas SW. Med. Ctr. vs. Nassar*, 133 Sp. Ct. 2517, 2534 (2013). The reason was that Plaintiff showed that his retaliation was due to his having noticed that a white employee, with less time on the job, was making more.

Doc. 52. If Williams intended this paragraph as an argument for pretext, it fails because it lacks any mention of International Moulding's stated explanation or why that explanation might be false. If he didn't, he does not make the argument at all. Either way, Williams' retaliation claim also fails.

\* \* \*

In sum, the court needn't delve into Williams's prima facie case in Step 1 because Williams fails to tackle International Moulding's race-neutral explanations in Step 3. Williams cites no facts that would create a jury question on the pretext issue, so he is not entitled to a trial on the issue.

## CONCLUSION

For the reasons stated above, International Moulding's motion for summary judgment (doc. 45) is due to be **GRANTED** as to both Counts I (race discrimination) and II (retaliation). This court will enter a separate order carrying out this finding.

**DONE** and **ORDERED** on April 26, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE